## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**JENNIFER L. MONNIER**,

      Plaintiff,

v.

**AMAZON.COM, INC.**, A Foreign For-Profit Corporation,

**AMAZON.COM SERVICES, LLC**, A Foreign For-Profit Corporation,

**AMAZON ADVERTISING LLC**, A Foreign For-Profit Corporation,

**SHENZHEN COOWALK INTELLIGENT TECHNOLOGY CO., LTD.**,
A Foreign For-Profit Corporation,

**SHENZHEN KUBU INTELLIGENT TECHNOLOGY CO., LTD.**,
**A.K.A.SHENZHEN KUBUZHINENG KEJIYOUXIANGONGSI**,
A Foreign For-Profit Corporation,

**SHENZHEN DIODE OPTOELECTRONICS TECHNOLOGY CO., LTD.**,
A Foreign For-Profit Corporation,

      Defendants.

---

## COMPLAINT

---

COMES NOW, Plaintiff Jennifer L. Monnier, by and through her counsel of record, Andrew W. Callahan of Wick & Trautwein, LLC, and for her causes of action against the above-named Defendants, alleges and states as follows:

### I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Jennifer Monnier is an individual and resident of Larimer County, Colorado.

2.    Defendants Amazon.com, Inc., Amazon.com Services, LLC, and Amazon Advertising LLC (collectively, "Amazon") are related corporate entities and foreign for-profit corporations, incorporated and registered in the State of Delaware, authorized to conduct business in the State of Colorado and engaged in the sale and distribution of consumer products, including the product at issue in this action. The principal office address listed for all three entities is 410 Terry Avenue North, Seattle, WA 98109-5210, and the address of their registered agent, Corporation Service Company (CSC), is 300 Deschutes Way SW, Suite 208 MC-CSC1, Tumwater, WA 98501.

3.    Defendants Shenzhen Coowalk Intelligent Technology Co., Ltd. ("Defendant Coowalk") and Shenzhen Kubu Intelligent Technology Co., Ltd. a.k.a Shenzhen Kubuzhineng Kejiyouxiaggingsi ("Defendant Kubu"), based upon information and belief, are foreign Chinese sellers based in Shenzhen, Guangdong Province, China.  Upon information and belief, they are not subject to jurisdiction by courts in the Unites States but are named here out of an abundance of caution.

4.    Defendant Coowalk and Defendant Kubu branded, marketed, and sold to consumers in the United States, the "Coowalk" heated insole product which was sold to Plaintiff and ultimately caused her injuries.

5.    Defendant Shenzhen Diode Optoelectronics Technology Co., Ltd. ("Defendant Diode"), upon information and belief, is a foreign Chinese manufacturer based in Shenzhen, Guangdong Province, China.  Upon information and belief, Defendant Diode is not subject to

jurisdiction by courts in the Unites States but is named here out of an abundance of caution.

6.      Defendant designed, manufactured, assembled, and/or supplied the Coowalk heated insole product at issue or its component parts.

7.      Pursuant to 28 U.S.C. §1332(a)(1), this Court has jurisdiction because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00.

8.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## II.      STATEMENT OF FACTS

9.      On or about October 31, 2023, Plaintiff purchased a pair of heated insoles sold under the CooWalk brand (hereinafter the "Heated Insoles" or "Product") from Defendant Amazon's online marketplace.

10.      Amazon advertised the product to Plaintiff, processed the transaction, accepted payment, and delivered the product to Plaintiff.  Amazon further received a portion of the sales proceeds paid by Plaintiff for the product.

11.      Plaintiff purchased the Heated Insoles for the intended purpose of keeping her feet warm in cold weather conditions. Plaintiff suffers from Raynaud's Disease, a chronic medical condition that causes extreme sensitivity to cold temperatures in the extremities.

12.      Defendant Amazon stocked and stored these heated insoles in its warehouses for the sole purpose of being sold to and used by customers such as Plaintiff.

13.      These heated insoles were sold by Amazon with reasonable expectation that the product would be purchased and used by customers across the United States and the world.

14.      On February 10, 2024, while walking her dogs in Fort Collins, Colorado, Plaintiff

was wearing winter hiking boots containing the Heated Insoles purchased from Amazon.

15. Shortly after activation, and while Plaintiff was walking normally, the Heated Insole in Plaintiff's right boot overheated, ignited, and burst into flames. Plaintiff immediately experienced excruciating pain in her right foot and observed smoke coming from her boot.

16. Plaintiff attempted to remove her right boot but struggled to do so because of the lace-up nature of the boot paired with the shock of the sudden Product failure. When Plaintiff was ultimately able to remove the boot, the Heated Insole had melted and adhered to Plaintiff's skin, causing severe burns to her outer right foot.

17. Plaintiff was transported to Poudre Valley Hospital on the date of the incident, where she was treated for burn injuries and referred for specialized wound care. In the weeks and months following the incident, Plaintiff underwent repeated medical evaluations, wound debridement procedures, pain management, and ongoing treatment at the Poudre Valley Hospital Wound Clinic.

18. Despite conservative treatment, Plaintiff's burn injury was slow to heal and resulted in persistent pain, swelling, hypersensitivity, limited mobility, and functional impairment. Accordingly, Plaintiff was ultimately referred to plastic and reconstructive surgery and physical therapy due to the severity and chronic nature of her injuries.

19. On or about July 10, 2025, Plaintiff underwent surgical excision of burn scar tissue and placement of an Integra bilayer skin graft on her right foot.

20. On or about August 7, 2025, Plaintiff underwent a second surgical procedure consisting of a split-thickness skin graft harvested from her right thigh and applied to the injured area of her right foot.

21. Plaintiff has required prolonged physical therapy and rehabilitation and continues

to experience pain, limited range of motion, weakness, gait impairment, and difficulty wearing normal footwear.

22.    As of the filing of this action, Plaintiff has incurred significant medical expenses, with additional treatment and costs anticipated in the future.

23.    Plaintiff has suffered and continues to suffer physical pain, emotional distress, loss of mobility, loss of enjoyment of life, and impairment of her ability to perform daily activities and occupational duties.

### III.    GENERAL ALLEGATIONS

24.    The heated insoles purchased and used by Plaintiff were consumer products intended and marketed for ordinary use by consumers to provide warmth to the feet in cold conditions. During normal and foreseeable use, the heated insoles could overheat, ignite, and generate excessive heat sufficient to cause serious burn injuries.

25.    Defendants Coowalk, Kubu, and Diode designed, manufactured, assembled, supplied, branded, and introduced the heated insoles into the stream of commerce. Amazon offered the heated insoles for sale to consumers, processed the transaction, arranged for delivery of the product. Amazon further exercised control over the product's availability, distribution, and post-sale handling. Each of the Defendants played a role in placing the product into the stream of commerce.

26.    Prior to Plaintiff's injury, Amazon had actual knowledge of safety incidents involving the CooWalk heated insoles. Amazon received notice from multiple consumers that the Coowalk heated insoles, and other similar products sold by Amazon, had overheated, ignited, and caused burn injuries to other consumers.

27.    In fact, in December of 2023, a consumer contacted Amazon from the hospital to

report suffering serious injuries caused by the heated insoles, to warn that the product posed an urgent safety risk, and to request that Amazon remove the product listing and notify prior purchasers. Despite Amazon having this knowledge, the heated insoles remained available for sale to consumers through Amazon's marketplace until at least November of 2025.



**Toronto & GTA**

# Burlington man suffers burns after Amazon insoles catch fire

Denette Wilford

Published Dec 29, 2023 · Last updated Dec 29, 2023 · 3 minute read

48 Comments

PHOTO BY SUPPLIED /Shayne Lemieux

A Burlington man has a warning for anyone who purchased the same or a similar product that he did, so they are aware of the risks.

28.    Amazon exercised control over consumer product safety measures associated with products sold through its marketplace, including the monitoring of safety complaints, the issuance of warnings and notifications to consumers, and decisions regarding product removal and remediation.

## IV.    FIRST CAUSE OF ACTION
### (Strict Products Liability: Design Defect)
*Against All Defendants*

29.    At all relevant times, Defendant Diode was the manufacturer and Defendants Amazon, Coowalk, and Kubu were sellers of the Heated Insoles within the meaning of the Colorado Products Liability Act, C.R.S. §§ 13-21-401, et seq.

30.    The Heated Insoles were unreasonably dangerous when they were placed into the stream of commerce in that they were prone to overheating, igniting, and causing burn injuries during normal and foreseeable use.

31.    The Heated Insoles were more dangerous in design than consumers would expect when they were placed into the stream of commerce in that they were prone to overheating, igniting, and causing burn injuries during normal and foreseeable use.

32.    The risks posed by the defective design of the Heated Insoles outweighed any alleged utility and desirability of the Product.

33.    The likelihood and seriousness of injury is substantial because normal and foreseeable use by Plaintiff and other consumers caused the Heated Insoles to overheat and ignite.

34.    A feasible, safer alternative design existed at the time of manufacture. Defendants had the ability to eliminate danger without impairing usefulness or making the product prohibitively expensive, but they did not.

35.    Defendants knew or should have known of the dangerous propensities of the Heated Insoles prior to Plaintiff's injury.

36.    Particularly, Amazon had actual knowledge of substantially similar incidents involving heated insoles catching fire prior to Plaintiff's injury.

37.    Plaintiff used the Heated Insoles in a manner that was intended and reasonably foreseeable by Defendants.

38.    The defective design of the Heated Insoles was a direct and proximate cause of Plaintiff's injuries and damages.

## V.    SECOND CAUSE OF ACTION
### (Strict Products Liability: Failure to Warn)
*Against All Defendants*

39.    At all relevant times, Defendants had a duty to provide adequate warnings and instructions regarding the known and foreseeable risks associated with the Heated Insoles.

40.    The Heated Insoles were functionally defective and unreasonably dangerous due to Defendants' failure to warn of the risk of overheating, ignition, and severe burn injury during normal use.

41.    Defendants knew or should have known of the dangerous propensities of the Heated Insoles prior to Plaintiff's injury.

42.    Particularly, Amazon had actual knowledge of substantially similar incidents involving heated insoles catching fire prior to Plaintiff's injury.

43.    Defendants failed to provide adequate warnings, instructions, or safeguards to Plaintiff and other consumers.

44.    The failure to warn as to the Heated Insoles was a direct and proximate cause of Plaintiff's injuries and damages.

45.    Plaintiff used the Heated Insoles in a manner that was intended and reasonably foreseeable by Defendants.

## VI.    THIRD CAUSE OF ACTION
### (Strict Products Liability: Manufacturing Defect)
*Against Defendant Diode*

46.    The Heated Insoles deviated from their intended design and specifications due to defects in manufacture, assembly, or quality control.

47.    The manufacturing defect rendered the Heated Insoles defective and unreasonably dangerous for their intended and foreseeable use.

48.    The manufacturing defect existed at the time the Heated Insoles left the control of the Defendant Diode.

49.    The manufacturing defect was a direct and proximate cause of Plaintiff's injuries and damages.

## VII.    FOURTH CAUSE OF ACTION
### (Negligence)
*Against All Defendants*

50.    Defendants owed a duty to Plaintiff to exercise reasonable care in the design, manufacture, testing, inspection, marketing, sale, and distribution of the Heated Insoles.

51.    Defendants breached their duties by, among other things, failing to adequately test the Product, failing to identify known hazards, failing to implement reasonable safety measures, and failing to warn consumers of known dangers.

52.    Amazon breached its duty by continuing to sell the Heated Insoles despite actual knowledge of their dangerous propensities.

53.    Defendants' negligence was a direct and proximate cause of Plaintiff's injuries and damages.

9

## VIII.   FIFTH CAUSE OF ACTION
### (Negligent Undertaking)
*Against Defendant Amazon*

54.    Amazon has a program called "Fulfillment by Amazon" ("FBA") which is a program that allows sellers to outsource marketing, sales, shipping and order fulfillment to Amazon. By enrolling in FBA, sellers can send market their products through Amazon's website and introduce their products into Amazon's global network of fulfillment centers, where Amazon takes care of picking, packing, and shipping orders. This service also includes handling customer service and returns, allowing sellers to focus on product development and customer satisfaction.

55.    FBA offers benefits such as free shipping to Prime members, enhanced customer trust, and increased sales potential due to Amazon's extensive delivery network. Through its marketplace and website, Defendant Amazon processed Plaintiff's payment associated with this transaction, controlled the terms of the transaction, and facilitated delivery of the Product to Plaintiff.

56.    As part of the FBA, Amazon receives a portion of the sales proceeds from the sale of any product, including specifically the Coowalk heated insole at issue in this case.

57.    Defendant Amazon affirmatively and voluntarily undertook responsibility for consumer product safety by actively screening products for hazards, monitoring and responding to safety complaints, issuing safety alerts and recall notices, controlling post-sale warnings to consumers, administering refunds, and determining whether products would remain available for sale on its marketplace.

58.    Amazon publicly represents to consumers, regulators, and the general public that it actively monitors products sold on its marketplace for safety hazards and takes action to protect consumers from dangerous products, including by removing unsafe products and

notifying affected purchasers.    On its public facing website, Amazon advertises its safety monitoring program.

## Recalls and Product Safety Alerts

Our Product Safety Team proactively investigates and addresses reported safety complaints and incidents to ensure customer protection from potential product-related safety risks. We closely monitor public recall alert websites and receive notifications from vendors and sellers. Upon discovering a product recall, we immediately halt affected product offerings, and promptly inform both customers and sellers involved about the recall. For more information visit our Safety Information, Recalls and Legal Notices Page .

59.    Amazon's undertaking of these safety-related responsibilities was intended, at least in part, to induce consumers to believe that Amazon monitors the products it sells on its website to protect consumers from unreasonable risks of harm.

60.    Plaintiff reasonably relied on Amazon's representations and purported safety measures in purchasing the Heated Insoles through Amazon's marketplace.

61.    Alternatively, Amazon's undertaking increased the risk of harm to Plaintiff by inducing reliance on Amazon's safety controls while negligently failing to identify, warn about, or remove known dangerous products.

62.    Prior to Plaintiff's injury, Amazon had actual knowledge of substantially similar incidents involving the Coowalk heated insoles because it received notice from consumers that the heated insoles had caused severe burn injuries and had been urged to remove the product from their marketplace.

63.    Despite this knowledge, Amazon negligently performed its undertaken safety responsibilities and breached its duty of care by failing to timely warn consumers, failing to timely remove the Heated Insoles from its marketplace, and failing to notify prior purchasers of the risk of fire and burn injury.

64.    The United States Consumer Product Safety Commission ("CPSC") has

determined that Amazon bears responsibility for hazardous products sold on its marketplace and has previously required Amazon to take corrective action to protect consumers from dangerous products sold through its platform. *See* Decision and Order Approving Notification and Action Plan, CPSC Docket No.: 21-2, Issued January 16, 2025*; see also* Decision and Order, CPSC Docket No.: 21-2, Issued July 29, 2024.

65.    Amazon's negligent undertaking of these safety measures was a direct and proximate cause of Plaintiff's severe injuries causing physical, emotional, and financial damages to Plaintiff as alleged herein.

## IX.    SIXTH CAUSE OF ACTION
**(Statutory Manufacturer Liability Under C.R.S. §§ 13-21-401 and 13-21-402)**
*Against Defendant Amazon*

66.    Amazon has repeatedly argued that it is not a seller for products sold through the FBA program.  However, this argument has been rejected by the United States Consumer Product Safety Commission.

67.    On July 29, 2024, the CPSC determined that Amazon acted as a *distributor* under the Consumer Product Safety Act "when it received, stored, and delivered . . . hazardous products through its Fulfilled by Amazon program." *See* Decision and Order, CPSC Docket No.: 21-2, Issued July 29, 2024.  "From pricing and payment processing to packaging, delivery, and tracking on the front end to post-sale customer service, returns, refunds, and recalls on the back end, Amazon exerts extensive control over products sold through its Fulfilled by Amazon program." *Id.*

68.    The CPSC further found: "Amazon's argument that it is merely a 'third-party logistics provider' misrepresents the far-reaching control Amazon exercises in its Fulfilled by Amazon program.  Amazon cannot sidestep its obligations under the CPSA simply because some

12

portion of its extensive services involves logistics." … "Instead, the facts here place Amazon comfortably within the role of distributor of the products at issue..." *Id.* at 27.

69.    Pursuant to C.R.S. § 13-21-401(3), a seller means any individual or entity, including a manufacturer, wholesaler, *distributor*, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption.

70.    Amazon's conduct of marketing, processing orders, accepting payment, receiving, storing, and delivering the Heated Insoles through its FBA program is performed as part of its business of selling products to consumers, not as a passive service to third parties. Therefore, Amazon is a "seller" under the Colorado Products Liability Act.

71.    Further, pursuant to C.R.S. § 13-21-401(1), a seller that has actual knowledge of a defect in a product is deemed to be a *manufacturer* for purposes of strict products liability.

72.    Prior to Plaintiff's injury, Amazon had actual knowledge of defects in heated insoles of the same or substantially similar design, including knowledge that such products posed a risk of overheating, ignition, and severe burn injury.

73.    Alternatively, Amazon is deemed a manufacturer pursuant to C.R.S. § 13-21-402 because jurisdiction over one or more of the actual manufacturers cannot not be obtained, as these entities are Chinese companies with no known direct contacts in the United States.

74.    As a statutory manufacturer, Amazon is strictly liable for the defective and unreasonably dangerous condition of the Heated Insoles.

75.    Amazon's statutory manufacturer liability is in addition to, and not in lieu of, the liability of Defendant Coowalk and the Manufacturer Defendants, each of whom independently designed, manufactured, branded, supplied, and/or placed the Heated Insoles into the stream of commerce.

76.     Amazon's conduct, including its sale, distribution, and continued placement of the Heated Insoles into the stream of commerce despite actual knowledge of their dangerous nature, was a direct and proximate cause of Plaintiff's injuries and damages.

## X.     JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby demands a trial to a jury on all issues herein and requests the following relief:

1.     An award of compensatory damages against Defendants in an amount exceeding the jurisdictional minimum required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, sufficient to fairly and reasonably compensate Plaintiff for the injuries and damages alleged herein.

2.     An award of punitive damages against Defendants, as permitted under Colorado law, based on Defendants' willful and wanton conduct, reckless disregard for the rights and safety of consumers, and conscious indifference to the known risk of serious injury posed by the defective Heated Insoles, in an amount sufficient to punish Defendants and deter similar misconduct in the future.

3.     An award of pre- and post-judgment interest as allowed by law, costs of suit, attorneys' fees where permitted, and such other and further relief as the Court deems just and equitable.

Respectfully submitted this 29th day of December, 2025.

BY:     *s/ Andrew W. Callahan*
Andrew W. Callahan, #52421
WICK & TRAUTWEIN, LLC
323 South College Ave., Suite 3
Fort Collins, CO 80524
Phone: (970) 482-4011
Email: acallahan@wicklaw.com
*Attorneys for Plaintiff Jennifer Monnier*

14